UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MORRIS WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 4:20-cv-01132-SEP |
| ) | |
| STANLEY PAYNE, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court upon review of the Second Amended Complaint submitted by self-represented Plaintiff Morris Williams, an inmate at the Eastern Reception, Diagnostic, and Correctional Center (ERDCC).  For the reasons set forth below, this action is dismissed without prejudice.

### BACKGROUND

This civil action was commenced after Plaintiff and another inmate filed a joint Complaint pursuant to 42 U.S.C. § 1983 against three prison officials to claim they were wrongfully denied assignment to the Protective Custody Unit (PCU).  Plaintiff did not sign the Complaint, and the Complaint appeared to advance claims on behalf of other people.  The Court severed Plaintiff from the original case and opened the instant case for him, giving him the opportunity to file a signed amended complaint to set forth his own claims for relief.

Plaintiff filed his First Amended Complaint pursuant to 42 U.S.C. § 1983 against Warden Stanley Payne, Functional Unit Manager Ted Eaton, and Case Manager Sara Miller.  In it, he claimed that while he was awaiting his requested assignment to the PCU, Miller and Eaton, with Payne's written approval, had moved him to a housing unit in which he had fewer privileges than other inmates.  Specifically, he claimed that other inmates enjoyed greater freedom from mechanical restraints, more frequent telephone access and canteen transactions, contact visits, and better access to television, radio, and social media.  Plaintiff also claimed that he had been placed near an inmate with whom he had an altercation 20 years earlier.  As relief, Plaintiff asked that he be placed in another area or transferred to a different prison.

Upon initial review under 28 U.S.C. § 1915(e)(2), the Court determined that the First Amended Complaint had to be dismissed for, among other reasons, failure to allege the personal

1

responsibility of Defendants and failure to state a cognizable claim.  Doc. 16.  The Court explained the reasons for dismissal of the First Amended Complaint and gave Plaintiff clear instructions for preparation of a second amended complaint.  Plaintiff has now filed his Second Amended Complaint (SAC), which is subject to review pursuant to 28 U.S.C. § 1915(e)(2).

## I.     The Second Amended Complaint

Despite the Court's clear instructions, Plaintiff did not file the SAC on the proper form; nor did he identify all intended defendants in the caption.  Still, he clearly brings claims pursuant to 42 U.S.C. § 1983 against Payne, Miller, and Eaton, in their individual and official capacities.

Plaintiff's claims arise from being transferred to different housing units while awaiting space in the PCU.  Following transfer, he lacked privileges enjoyed by other inmates.  Plaintiff identifies his claims as arising under the Fourteenth Amendment.  He claims that Defendants denied him "fair and impartial treatment" in violation of his right to due process under the Fourteenth Amendment.  Doc. 20 at 1.  In support, Plaintiff alleges the following facts.[1]

Defendants Miller and Eaton were members of ERDCC's Protective Custody Committee, and Payne was the ERDCC warden.  When Plaintiff requested placement in the PCU, Miller and Eaton put his name on a waiting list and moved him to a different housing unit to await available PCU space.  In that unit, Plaintiff lacked privileges other offenders had, including the ability to possess appliances, more frequent access to the canteen, daily phone calls and showers, outside yard privileges, contact visits, and the ability to be out of his cell without mechanical restraints.  Plaintiff complained of this to Miller and Eaton, who encouraged him to be patient.  Plaintiff claims that Defendants knew or should have known it was discriminatory to place him in a unit where he would not have the same privileges as other offenders.  Plaintiff also alleges that Defendants mistreated him by making him wait to go to "HU#3." *Id.* at 3.

Plaintiff filed an Informal Resolution Request (IRR) and requested that an empty wing of the facility be converted so that he and others in his situation could retain all of their privileges while awaiting space in the PCU.  Plaintiff's IRR was "abruptly denied," and Miller "ridiculed" him.  *Id.* at 4.  Plaintiff then filed an IRR to complain about Miller and to advance complaints related to the treatment of another offender.  He also complained that he should not be housed near any inmate who was a member of the facility's "general population."

---

[1] The Court presumes that the facts alleged in the SAC are true.  *See Smith v. Godert*, 2018 WL 3405253, at *1 (E.D. Mo. July 12, 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff was placed in a cell with Keven Ward, another offender, and he wrote Miller to request a cell change. Miller verbally denied it. Plaintiff wrote a second letter requesting a cell change, and indicated that he had sent a copy to his State Representative. According to Plaintiff, that made Miller very upset. *Id.* Miller and Eaton then reassigned Plaintiff to a different housing unit, near an offender with whom he had previously had an "unreported" confrontation. *Id.* at 6. Plaintiff does not allege that any Defendant was aware of his history with that individual, or that the individual threatened him. He claims only that it was wrong for Defendants to place him in that unit. *Id.* According to Plaintiff, that unit should be reserved for general population offenders who are "vicious criminals." *Id.*

Plaintiff also claims that he received an undeserved conduct violation—issued by one of the corrections officers because Plaintiff refused to room with a general population offender—and claims that he received it because Miller and Eaton needed a reason to place him in an area where general population offenders were housed. He further alleges that, while at a different facility, a prison gang that also has members at ERDCC placed a bounty on him. He does not specify whether he was housed near members of that gang.

As relief, Plaintiff asks the Court to order Defendants to pay for any future medical bills he may incur if he is ever diagnosed with cancer, diabetes, or any other foreseeable illnesses. *Id.* at 8. He does not identify any current health problems, nor allege whether he was denied medical care. He also seeks immediate transfer to one of three other MDOC facilities.

**II.    Letter to the Clerk of the Court**

After Plaintiff filed the SAC, he submitted a letter to the Clerk of the Court, which indicated that he wanted to dismiss this action. Doc. 22. The Letter also indicates, without elaboration, that he requests the Court "stay upon the Proceedings." *Id.* (emphasis in original). Finally, the Letter claims that, because he filed this action, Defendants' "co-workers" put razor blades in his food and falsified sexual misconduct charges against him. *Id.* He does not, however, allege any supporting facts or identify the individuals he believes to be responsible.

**LEGAL STANDARD**

Under 28 U.S.C. § 1915(e)(2), the Court is required dismiss the SAC if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim if it does not plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court accepts all well-pled facts as true, but need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

The Court must liberally construe the complaints of laypersons. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[I]f the essence of an allegation is discernible," the Court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). But even *pro se* complaints must allege facts that, taken as true, state a plausible claim. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume unalleged facts, *Stone*, 364 F.3d at 914-15, or relax procedural rules for those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## DISCUSSION

### I.     Plaintiff's official-capacity claims must be dismissed.

A suit against an officer in his official capacity is really a suit against the principal entity. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). Plaintiff's allegations establish that all three Defendants were employed by the Missouri Department of Corrections (MDOC). *See Walker v. Mo. Dep't of Corr*., 213 F.3d 1035, 1036 (8th Cir. 2000) (recognizing MDOC as state agency). To the extent that Plaintiff seeks injunctive relief, his official-capacity claims are dismissed because he fails to demonstrate a continuing or impending state action that violates the Constitution, and also fails to show that "the entity itself [was the] 'moving force' behind the deprivation." *Graham,* 473 U.S. at 166 (citing *Polk County v. Dodson,* 454 U.S. 312, 326 (1981)). To the extent that Plaintiff seeks monetary relief, Defendants are not considered "persons" under § 1983, *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), and such claims are barred by the Eleventh Amendment. *See Nix v. Norman*, 879 F.2d 429, 432-33 (8th Cir. 1984).

4

## II. Plaintiff's individual-capacity claims must be dismissed.

The Court now turns to Plaintiff's individual-capacity claims. He alleges that his Fourteenth Amendment right to due process was violated because he was not immediately assigned to the PCU per his request. Instead, Defendants placed him on a waiting list and assigned him to a housing unit where he lacked certain privileges enjoyed by other inmates.

> The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, or it may arise from an expectation or interest created by state laws or policies.

*Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). Accordingly, Plaintiff must first identify a constitutionally-protected liberty interest; the analysis then continues to the question of what process was due. *See id.* (quoting *Wilkinson,* 545 U.S. at 221) (Courts "need reach the question of what process is due only if the inmate establishes a constitutionally protected liberty interest . . . .") (cleaned up).

The Supreme Court has "held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* (quoting *Wilkinson,* 545 U.S. at 221). While a prison official may not transfer a prisoner in retaliation for the prisoner's exercise of a constitutional right, a prison official "may ordinarily transfer a prisoner for whatever reason or for no reason at all," even if the prisoner is transferred to a more restrictive environment. *Id.* at 1080 (quoting *Cornell v. Woods,* 69 F.3d 1383, 1387 (8th Cir. 1995)). In certain circumstances, states may create liberty interests protected by the Due Process Clause. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In this case, Plaintiff has failed to identify a constitutionally-protected liberty interest. The allegation that he was transferred to a unit where he lacked the privileges enjoyed by other inmates is insufficient. *See Smith,* 954 F.3d at 1079. Plaintiff was not subjected to the types of deprivations that qualify as atypical and significant. While there is no particular baseline for

identifying an atypical and significant hardship, in *Smith*, the Eighth Circuit recognized prior determinations that a demotion to segregation, even without cause, was not itself an atypical and significant hardship under *Sandin. Id.* In *Kennedy v. Blankenship*, the Eighth Circuit considered an inmate's due process claim based upon his transfer to restricted custody where he no longer had the ability to work or earn good time credits, and restrictions were placed on his mail, telephone, visitation, commissary, and property privileges. 100 F.3d 640 (8th Cir. 1996). The court determined that, while the conditions were indeed more restrictive, they did not amount to a "dramatic departure from the basic conditions" of the inmate's confinement, and therefore did not amount to "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 643 (quoting *Sandin,* 515 U.S. at 485-86).

The same is true here. Plaintiff alleges that he was temporarily unable to possess appliances, enjoy frequent canteen, telephone, or shower access, enjoy outside yard privileges, have contact visits, or be outside of his cell without restraints. Those restrictions do not amount to a "dramatic departure from the basic conditions" of his confinement. *Id.* He has failed to establish that he was subjected to conditions that amounted to "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 643 (quoting *Sandin,* 515 U.S. at 485-86). Plaintiff's allegations therefore fail to state a colorable Fourteenth Amendment due process claim.

Plaintiff also claims that his second move was in retaliation for sending his state representative a copy of the letter to Miller. Again, his allegations fail to state a colorable retaliatory transfer claim. To raise such a claim, Plaintiff must show, *inter alia*, that impermissible retaliation was the actual motivating factor for his transfer. *Cornell,* 69 F.3d at 1387-88. Plaintiff's allegations establish that both transfers occurred after he asked to be moved, and as discussed above, he was not transferred to areas where he was subjected to atypical and significant hardship. Plaintiff merely speculates that Miller was upset enough to take action. Allegations of retaliatory motive must be more than speculative and conclusory. *See Atkinson v. Bohn,* 91 F.3d 1127, 1129 (8th Cir. 1996).

Plaintiff's allegations also fail to state a colorable claim under the Eighth Amendment. He apparently claims that Defendants are liable because they moved him to a general population area. A prison official violates the Eighth Amendment if he or she "acts with deliberate indifference to a substantial risk of harm to the prisoner." *Perkins v. Grimes,* 161 F.3d 1127,

6

1130 (8th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).  Deliberate indifference has both an objective and a subjective component.  The objective component requires the prisoner to demonstrate a substantial risk of serious harm; the subjective component requires the prisoner to show that the official had a culpable state of mind—that is, he disregarded a known risk.  *Blades v. Schuetzle*, 302 F.3d 801, 803 (8th Cir. 2002) (quoting *Perkins*, 161 F.3d at 1130).  The subjective component requires that the official be aware of facts from which he could have (and did) infer the existence of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 837.

   Plaintiff fails to allege facts permitting the inference that any defendant disregarded a known risk of serious harm.  He does not claim, for example, that Defendants knowingly moved him to an area where he would face a greater risk of harm.  He alleges only that he had problems with offenders from another facility and that, because those offenders are "vicious criminals," he should not be housed in a general population area.  Doc. 20 at 6.  But Defendants were not required "to segregate indefinitely all inmates whose original crimes suggest they might be capable of further violence."  *Curry v. Crist*, 226 F.3d 974, 978 (8th Cir. 2000).

   Plaintiff also claims that Defendants "were meting-out harsh mistreatments that comported to cruel and unusual punishment that is and was shocking to the conscious [*sic*] of a maturing society by having plaintiff upon a waiting list to go to [] (HU#3) to be afforded with" the privileges previously described.  Doc. 20 at 3.  Those allegations are conclusory and not entitled to the presumption of truth.  *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

   Finally, Plaintiff does not plead facts permitting the inference that he was subjected to different treatment based on either a suspect classification or a fundamental right, as necessary to state a colorable Equal Protection claim.  *See Weems v. Little Rock Police Dep't,* 453 F.3d 1010, 1016 (8th Cir. 2006).

**III. Plaintiff's letter to the Clerk of the Court has no effect on his claims.**

   The Court now addresses Plaintiff's October 25, 2021, letter to the Clerk of the Court.  It does not appear Plaintiff filed the letter in an attempt to advance any particular claim for relief.  Nevertheless, the Court has considered whether Plaintiff's averments would state any actionable claims, and they do not.  Plaintiff's allegations of unidentified persons tampering with his food and falsely accusing him of misconduct are wholly conclusory and not entitled to the presumption of truth.  As this Court has repeatedly advised Plaintiff, courts are not required to

7

assume the veracity of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . ." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

The record does not reflect that this Court failed to respond appropriately to any of Plaintiff's filings. Instead, the Court has entered orders ruling on Plaintiff's motions and has entered orders directing him to submit amended pleadings. Moreover, letters are an inappropriate means by which to communicate with the Court regarding a pending matter. *See* Local Rule 4.04(A); *see also Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) (internal citation omitted) ("Even pro se litigants must comply with court rules and directives."). Although Plaintiff argues that this action should have proceeded beyond the initial review stage once he submitted payments toward his filing fee, under the Prison Litigation Reform Act of 1996, prisoners become responsible for payment of the full filing fee whenever they commence a civil action or appeal, regardless of the outcome of such action or appeal.

## Conclusion

For all of the foregoing reasons, this action is subject to dismissal. Under the circumstances, leave to file a third amended complaint is not warranted. Plaintiff has been given repeated opportunities to clearly set forth colorable claims, and he has failed to do so. The Court will therefore dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2).

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 21st day of December, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE